**WESTCHESTER FIRE INSURANCE COMPANY, Appellant,**

v.

**Mary T. LOWE, Appellee.**

**No. 09–93–024 CV.**

Court of Appeals of Texas, Beaumont.

Submitted Sept. 9, 1994.

Decided Nov. 23, 1994.

John W. Bridger, Theodore P. Ray, Strong, Pipkin, Nelson & Bissell, Beaumont, for appellant.

Thomas P. Roebuck, Jr., Bush, Lewis, Ramsey & Roebuck, Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION ON MOTION FOR REHEARING

BROOKSHIRE, Justice.

The Honorable Thomas P. Roebuck, Jr., filing for the firm of Bush, Lewis, Ramsey & Roebuck, P.C., drafted, signed, and filed a Motion for Rehearing. Lest we be accused of selectively printing and publishing certain barbed clauses, phrases, and sentences in the Motion for Rehearing, we have determined to set out the Honorable Thomas P. Roebuck, Jr.'s, APPELLEE'S MOTION FOR REHEARING in full and verbatim.

> Appellee MARY T. LOWE humbly submits that this Court's majority Opinion will serve only to further denigrate the public's perception of lawyers, judges and the entire civil justice system. Generally, the public believes that lawyers and judges, in order to promote their own perpetual motion machine, mire themselves in a complex morass of legal mumbo-jumbo, unin-telligible by the real people the system was designed to protect, and who place our judicial officials on their respective thrones. Those propagating the timeless political theme of judicial reform constantly complain of the countless delays and uncontrollable expense of litigation.

> Appellee suggests that this Court's Opinion will serve to fuel the fanatic fire of those seeking judicial reform and further poison the public's perception of the entire system.

> In the instant case, the legislature wrote a statute very specific in its terms giving the insurance company a credit only for prior compensable injuries and creating a second injury fund. (Article 8306 § 12c(a) Tex.Rev.Civ.St.Ann. [sic]) The purpose of the Statute was obvious: if an employee had suffered a previous compensable injury at a previous place of employment and sought new employment, the employer would be unlikely to hire that new employee if it believed it would be held liable for all the employee's damages for a subsequent injury. Clearly the Statute was designed to reduce the worker's compensation carrier's exposure and to stimulate the ability of injured workers to obtain new employment.

> The Statute does not even address the issue before this honorable Court, that being whether an insurance company is entitled to receive a credit for a subsequent compensable injury.

> The Court's Opinion herein does not further any legitimate purpose; it only serves to feed the unreasonable fear that an injured worker with a competent lawyer might, as in the instant situation, be able to obtain fair recovery under a grossly inadequate workers' compensation statute.

> Furthermore, any suggestion that Mrs. Lowe, in the instant case, would receive a double recovery is absolutely ludicrous. The instant case does not involve a situation where the workers' compensation carrier was prohibited from presenting evidence of a subsequent compensable injury. The record was replete with evidence of a subsequent compensable injury. If the majority of the Court would read *St. Paul*

*Fire & Marine Ins. Co. v. Murphree,* 163 Tx. 534, 357 S.W.2d 744 (1962), instead of following what appears to be a result-oriented approach, the Court would realize that the trial judge was merely attempting to fulfill his obligation and follow the law as defined by statutory and case law.

Judges and trial lawyers are supposed to be able to rely on the strict meaning of statute and the holding as opposed to pure dicta of the case law. It is unfortunate that the appellate courts in *Claridy v. Texas Employers' Ins. Ass'n,* 795 S.W.2d 228 (Tex.App.—Waco 1990, writ denied) and *Jones v. Pacific Employers Ins. Co.,* 416 S.W.2d 580 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.), have sort have taken [sic] a Darwinian approach to the interpretation of case law in the state of Texas. The *Claridy* and *Jones* court's [sic] have taken the amoeba spawned in *Murphree,* ignored the literal language in § 12c(a) and manufactured their own version of *Homo sapiens.* That is, a credit for previous compensable injury actually means the insurance company is entitled to a credit for subsequent compensable injuries.

The majority of this Court, unfortunately has blindly followed the "Pied Piper" in *Claridy* and *Jones* into a bottomless abyss, bordered by smirking Westchester Fire Insurance Company on one side and a frantic, helpless Mary Lowe on the other.

In July of 1990, the Chief Justice of this honorable Court chastised the federal judiciary on what he labeled as a "downhill runaway train." Further, the honorable Chief Justice accused one federal district judge in particular of attempting to usurp the authority of the Texas legislature. It would appear this Court has joined the enemy.

Counsel for the Appellee has the highest regard for the integrity of all the members of this honorable Court; however, even this Court can be wrong. As Justice Burgess so concisely phrased it, the Court had two paths to choose, the *Claridy/Jones* path or the *Grimes/Peoples* path. [*Liberty Mutual Ins. Co. v. Peoples,* 595 S.W.2d 135 (Tex.Civ.App. San Antonio 1979, writ ref'd n.r.e.) and *Southern Underwriters v.*

*Grimes,* 146 S.W.2d 1058 (Tex.Civ.App. 1940, writ dismissed, judgment cor.) ]. In choosing the *Claridy/Jones* path, this Court has absolutely ignored the literal meaning of § 12c(a) of the Workers' Compensation Act, and one of the oldest rules of statutory construction, that being that all statutes are strictly construed.

More importantly, in the instant case, Appellee is probably dealing with a court of last resort. This is an old-law workers' compensation case; therefore, not being one which will probably catch the Supreme Court's attention, even with a dissent. This Court's decision sends a clear message to working folks in general and to Mary Lowe specifically: the written law means what the written law says unless we can change it to benefit an insurance company. It is requested that this honorable Court rehear this matter and affirm the ruling of the trial court.

> Respectfully submitted,
> BUSH, LEWIS, RAMSEY & ROEBUCK, P.C.
> By: __/s/ Thomas P. Roebuck,Jr.__

The record makes it crystal clear, and, indeed, undisputed that the appellee, Mary T. Lowe, sustained two different on-the-job injuries. The first injury was experienced on January 15, 1987 (first injury). A separate and distinct second on-the-job injury occurred on October 5, 1987 (second injury). The jury found that Lowe received an injury on or about January 15, 1987 in the course of her employment with Giant Supermarket which was a producing cause of incapacity. This appeal concerns the first injury.

The jury found that the total incapacity from the first injury had a beginning date of January 15, 1987, and an ending date of February 2, 1987. The jury found that the partial incapacity resulting from the second injury had a beginning date of October 5, 1987, and was permanent. The record plainly demonstrates that after nine days of bed rest without prescription medication that the appellee and her treating physician agreed that appellee could return to her regular work performing her usual duties on her job. The appellee did so.

However, the second injury of October 5, 1987, was followed by physical therapy and prescribed medication for the relaxing of appellee's muscles. Other diagnostic tests and tools were performed as a result of the second injury. A physician in Port Arthur prescribed injections of cortisone. The injections relieved appellee's pain from the second injury but only on a temporary basis.

After the second injury appellee testified to numerous and disabling incapacities. Testimony of probative worth showed that the appellee after the second injury was in pain from it all the time and that as a sequence of the second injury, she was not able to dress herself or bathe or wash herself without experiencing pain. Appellee's selected Port Arthur physician, Dr. Archambault, testified that the effect and the contributing factor of the subsequent, second injury resulted in the appellee's present, sued-on condition by making the appellee's condition worse and painful. The governing statute, being TEX.REV. CIV.STAT.ANN. art. 8306 § 12c(a) (Vernon Supp.1989) provides:

> If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the "Second Injury Fund," hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries....

This article 8306 and its relevant section further, in a salutary manner, provide that notice of the injury to the employer and the filing of a claim with the Industrial Accident Board as required by law shall also be deemed and considered notice to and the filing of a claim against the "Second Injury Fund". Thus, the injured employee is not without a remedy and has the beneficial results and the benefits of the provision of the law that his or her notice of injury and claim for compensation are also deemed to be no-

tice of injury and claim for compensation preserving all of his or her rights against the "Second Injury Fund".

One consideration (for the decisional precedents) is that the employer at the time of the earlier injury may be the same employer or a different one from the employer at the time of the subsequent injury. Moreover, the workers' compensation insurance carrier may have changed from one carrier to another between the time of the first injury and the second injury.

Section 12c(a) by its own terms speaks of a previous injury suffered by an employee and a subsequent injury sustained, whereby an injury subsequent to the injury on trial contributes to the plaintiff's incapacity.

■ However, as early as 1962 the Texas rule by decisional law of the Supreme Court in *St. Paul Fire & Marine Insurance Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744 (1962), affirmatively and clearly approved the situation where a percentage reduction was applied by the trial court for a subsequent injury in the same manner as for a previous injury. In *Murphree*, Justice Clyde Earl Smith of Woodville, Tyler County, (known affectionately as the "Great East Texas Dissenter") wrote the opinion for the court, Justice Smith wrote:

> The injury directly involved in this suit is alleged to have been sustained on April 30, 1959. Prior injuries and one subsequent injury are also involved. Evidence showing the nature and extent of these injuries was introduced before the jury. *Such evidence was admissible, inasmuch as it is the extent of the prior and subsequent injuries that reduces the insurer's liability,....* (emphasis added)

This is Supreme Court law. In order to have any reasonable degree of uniformity in the law throughout Texas, an intermediate court of appeals is bound to follow Texas Supreme Court opinions.

■ At least this writer cannot agree that the Texas Supreme Court will shirk its duty. Justice Smith further reasoned and held that the evidence of both the prior and subsequent injuries were material factors for the triers of the facts in determining the extent

of the prior and subsequent injuries contributing to Murphree's disability. Thus relevant questions are to be given to the jury.

The trial judge in Murphree's case sustained Murphree's motion to disregard a jury finding that a June 28, 1957, injury contributed 25 percent to Murphree's incapacity on the ground that this particular injury was both a general (but more importantly) and a noncompensable injury. The trial judgment was entered for Murphree for total and permanent disability benefits less, however, 55 percent contribution by the two prior compensable injuries and also deducted therefrom the contribution of the one *subsequent compensable injury*. The Amarillo Court of Civil Appeals affirmed the judgment of the trial court. The Supreme Court affirmed the Court of Civil Appeals. This action was not mere dicta.

Therefore, in its actual holding and in the arithmetic involved in reaching the holding, the Supreme Court approved the 5 percent reduction for the subsequent compensable injury. Thus this holding by the Texas Supreme Court was not obiter dicta. The legislature has met many times since 1962. The legislature in its wisdom has not overruled *Murphree* by statute; it could have easily done so if the members had so desired. *Murphree* has been the seminal, land-mark decision since June of 1962.

It is obvious under our record that Westchester Fire Insurance Company sought to obtain such correct jury findings relevant to the admittedly more serious and more long-lasting compensable, subsequent injury to the first injury that was sued upon in this instant case by Mary Lowe. The correct jury questions were refused. *St. Paul Fire & Marine Insurance Co. v. Murphree*'s holding was violated. The Supreme Court opinion thereon was administered an orchidectomy. This was error. Other cases reason and hold (some with dicta) that to proceed otherwise would result in either double recoveries or overlapping and duplicate recoveries of compensation. Noteworthy is the fact that the Supreme Court's bottom line holding was "[t]he judgments of both the trial court and the Court of Civil Appeals are affirmed."

Clearly and unequivocally in *St. Paul Fire & Marine Insurance Co. v. Murphree* the percentage reduction brought about by the subsequent injury was applied and deducted by the trial court and the percentage of disability attributable to the subsequent injury acted as a reduction in the same manner as for a previous injury. *The Supreme Court unequivocally acknowledged in Murphree that: "the legal effect of a subsequent injury (September, 1959) is no different than that of a prior injury"* and the Supreme Court's judgment affirmed that legal proposition. But if this holding is mere dicta or obiter dicta (as appellee's counsel maintains), it is pretty good plain, straight, clear dicta.

In *Jones v. Pacific Employers Insurance Company*, 416 S.W.2d 580 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.), the unanimous court addressed the point directly and squarely held that the reduction should be applied for a subsequent compensable injury in the exact same manner as for a previous injury in order to avoid a double recovery for the second injury. Chief Justice Grissom writing for a unanimous court held:

The reason for limiting liability of the employer's insurer by deducting the 40% contribution to present incapacity by a later injury is just as valid here as the limitation expressly stated to be applicable to prior compensable injuries in section 12c. In this case the record shows that the trial court knew that appellant had previously settled for said last injury with another employer's different insurance carrier for that subsequent injury, which the jury found contributed 40% to appellant's present incapacity. *If the court had included said 40% in the recovery granted it would have allowed a double recovery for the same accident and incapacity. Furthermore, it would cause appellee to pay for 40% of appellant's incapacity caused by a subsequent injury while he was employed by a different employer and insured by a different insurer.* We do not believe that the law contemplated such a recovery. (emphasis added)

This is our case sub judice except the employer was the same; but the workers' compensation carrier was different. But appel-

lee maintains that any suggestion of receiving "a double recovery is absolutely ludicrous."

The reasoning and rationale in *Murphree* was reaffirmed by the Supreme Court of Texas in *Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331 (Tex.1963).

In *Hartford Accident and Indemnity Co., supra,* the Court held:

Our affirmance of the Court of Civil Appeals' holding is not, as respondent contends, inconsistent with the holding in *St. Paul Fire & Marine Insurance Co. v. Murphree* [163], Tex. [534], 357 S.W.2d 744 (1962). In that case we held that it was not reversible error to exclude a petition filed in connection with an injury subsequent to the injury in question when the facts alleged (nature and extent of injury) in that petition had been admitted by the plaintiff in his testimony at trial. The court there chose to hold that the testimonial admission of the facts stated in the petition rendered harmless any error in excluding it. The court might just as well have held, as we do here as to the documents relating to the 1955, 1956 and October, 1957 injuries, that because of the testimonial admission of the facts stated in the petition, there was no inconsistency, thus no ground for its being received as an admission.

We affirm the judgment of the Court of Civil Appeals reversing and remanding case.

But the emphasis in *Hartford Accident and Indemnity Co., supra,* is different in that it deals with the admissibility or inadmissibility of certain documents, notice of claim, notice and claim for injury, pleadings, petitions, affidavits, and similar matters. The Supreme Court in *Hartford* noted that over the respondent's, McCardell's, objections the trial court admitted into evidence petitions, notices of injury and claims for compensation and affidavits filed in courts and with the Industrial Accident Board in connection with five other injuries that respondent had received. The Beaumont Court of Civil Appeals had held that the trial court had erred in admitting these various and sundry instruments and documents be-cause they were not admissions and that they were offered merely to show that the respondent had filed prior claims and lawsuits and that the admission of these numerous documents and instruments were not for the purposes of proving a defense under the then article 8306, § 12c. But the Supreme Court held that these matters went to the important and, indeed, ultimate issue of fact as to which injury or injuries was a producing cause of McCardell's present, in-trial complaints and incapacities. The Supreme Court held:

As evidence of § 12c rights the ultimate issue is whether or not the other injuries contributed to the present incapacity.

■ The opinion in *Hartford Accident and Indemnity Co., supra,* was written by Mr. Justice Hamilton and is an interesting and well-reasoned and logically defendable, thorough discussion of the rules of evidence concerning admissions and admissions against interest. Justice Hamilton was very careful to take up each and every injury involved and the documents, claims and affidavits and notice pertaining to each injury. The opinion is thorough and interesting to read. But a fair, if incomplete, summary of Justice Hamilton's holdings involve, we perceive, excellent logic. The Supreme Court clearly held that "the well-accepted rule is 'evidence of a statement made out of court when such evidence is offered for the purpose of proving the truth of such previous statement is inadmissible as hearsay.' McCormick and Ray, Texas Law of Evidence, Vol. 1, § 781, and cases there cited." But there is a cardinal exception to this rule. The exception is that an admission of a party against his interest in reference to a material matter is admissible. An admission used in this sense may be defined simply as any statement made or act done by one of the parties to an action or on his behalf which amounts to a prior acknowledgment by such party that one of the facts relevant to the issues is not as he now claims and contends.

The Supreme Court held that as evidence, admissions by a party are relevant and material and are of the nature of a two-pronged assault on the admitter's present case or present contentions and positions. As a true

exception to the hearsay rule, such admissions prove the facts admitted. Also as a second prong and since the prior admissions are inconsistent with the admitter's testimony at the current trial, the admissions tend strongly to impeach his or her credibility. Therefore, admissions are especially introducible before the jury because the credibility as well as the impeachment of the credibility of the witness-claimant is of paramount utility for the functions of the factfinders.

■ Therefore, all that is required for virtually any type of document which otherwise might be condemned as being hearsay in nature to fully qualify as an admission is that the document or instrument must contain some statement relevant to a material issue in the case on trial and be inconsistent with the position taken by the party against whom it is introduced.

### The Texas Pattern Jury Charges

Of significance are the Texas Pattern Jury Charges concerning issues arising from a subsequent compensable injury and how the same are to be worded and submitted. 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 24.06 (1989). This late publication recites in substance that the State Bar of Texas publishes practice books prepared and edited by knowledgeable authors to give practicing lawyers and busy judges with heavy dockets as much assistance as possible. In the appropriate comment to PJC 24.06, it is pointed out that PJC 24.06 should be used if there is evidence of the existence of a second, later compensable general injury that has contributed a percentage toward the worker's general incapacity resulting from the injury sued on.

■ PJC 24.06 should also be submitted if there is evidence of the existence of a subsequent specific injury that has contributed a percentage toward the worker's general incapacity from the injury sued on. Significantly, if there is evidence of the existence of a previous, general injury that has contributed a percentage toward the worker's general incapacity from the injury sued upon, PJC 24.05 is ordinarily to be submitted. These approved jury charges are based and properly founded upon TEX.REV.CIV.STAT.ANN. art.

8306, § 12c(a) (Vernon Supp.1989). Also of importance is TEX.REV.CIV.STAT.ANN. art. 8306c, § 12c.

Effective on the date of August 29, 1977, article 8306, § 12c was amended to again restore the contribution defense that had been in force and effect before the 1971 amendment. Thus the 1971 amendment itself had been amended. This was a legislative enactment. See Act of August 29, 1977, Chapter 801, § 1, 1977, TEX.GEN.LAWS 2004. Admittedly, the 1971 amendment did have application to worker's compensation claims in which the date of injury occurred between September 1, 1971, and August 28, 1977. But that interim of time is not applicable here.

■ Therefore, Mary Lowe's cause of action for worker's compensation benefits was by legislative enactment subject to the defense of contribution by a second, subsequent personal injury.

Concerning the January 15th injury, the first injury, Mrs. Lowe herself affirmatively testified that she was off from work for nine days and that she went back to her same job of being a meat wrapper, that the manager on her job was still acting as manager after she returned, she was making $8.75 an hour and that she worked overtime. The record reflects from Mary Lowe:

Q. And you were doing all the work that they asked you to do?

A. Yes, I did.

Q. And after the day that Dr. Dunlop released you, you didn't miss any work because of your back until after October 5th?

A. No, I didn't. I didn't miss any work.

Q. And from February 2nd, 1987 when you last saw Dr. Dunlop and he released you to October 11th when you went to the emergency room, you didn't see any other doctors for your back?

A. No, I didn't.

Q. And you weren't on any prescription medication for your back?

A. No.

Q. And you weren't undergoing any physical therapy for your back?

A. No.

. . . .

Q. So for that nine month period—I just want to make sure I'm correct—you did your regular work at your regular pay with your regular hours and did all the tasks that you were asked to do; is that correct?

A. That's correct.

. . . .

Q. And as I understand it from your description, your work was pretty constant and you were on your feet probably at least six or seven hours a day from February 2nd to October 5th?

A. Yes.

During this time Mrs. Lowe did experience some pain but was able to perform all of her job duties and tasks. However, the record shows that on October 5th while lifting a tray Mrs. Lowe felt something definitely and immediately in her back and this something also went down into her legs and she went to the emergency room about five days later. After the October injury, Mrs. Lowe on occasions could not get out of bed. The record reflects that this was a second and a more serious and severe personal injury because the pain was not limited to her back but also included pain in her legs after the October 5th occurrence. After the October occurrence she felt that she simply could not return to work. Her present suit is, of course, on the first January injury.

Mrs. Lowe's October of 1987 injury was made the basis of another separate, distinct worker's compensation case wherein she claimed that she had suffered total, or in the alternative, partial incapacity as a result of the October injury and occurrence. In that October second injury matter, Mrs. Lowe sued Employers Insurance of Wausau which was at that time the new and different worker's compensation carrier for Giant Supermarket. Mrs. Lowe's second injury suit was settled before the instant case (based on the January first injury) on appeal went to trial on its own merits.

The record clearly demonstrates that Mrs. Lowe was able to return to work and also to do her housework around her home after her first injury. However, as a result of her second injury she could no longer bend at the waist, she could no longer clean her house, she could not mop nor tie her shoes nor return to gainful employment. Both injuries were indisputably compensable ones and each injury happened well within the scope and course of her employment, however, Mrs. Lowe's basic position was that the January 1987 first accident was the cause of her present, on-trial disabilities.

■ By order of the trial court made in response to a motion in limine filed by the plaintiff the defense was forbade to mention the filing of a second claim on the second injury or the existence of a second claim or the existence of a second lawsuit or any position taken or statement made by Mrs. Lowe in her pleadings and petitions in the separate lawsuit based on the second October injury. Therefore, Westchester Fire was denied any opportunity to attempt to impeach Mrs. Lowe's contention by showing that Mrs. Lowe had also, in an inconsistent manner, claimed in another lawsuit that her disabilities were not caused conclusively by the January 1987 accident. The carrier was denied a meaningful, proper cross-examination.

■ Also, the defendant was denied the right that it possessed to demonstrate to the jury that Mrs. Lowe admitted that contrary to her present position and her present contentions and claims that her incapacities, pains, and disabilities were to some important, substantial degree caused by a separate and distinct accident which occurred approximately nine months later. Prior or subsequent inconsistent pleadings of a party are admissible if they contain allegations or statements that are inconsistent with and hostile to the positions and contentions made by that same party on the trial of the merits in another suit. That is the situation here. See *Hartford Accident and Indemnity Co. v. McCardell, supra.*

Indeed, the pleadings in a particular case (for the purposes of that suit) are to be regarded as formal judicial admissions rather than mere ordinary admissions, if the same

are hostile or inconsistent to that same party's contentions and position at the present trial. 2 C. McCormick & R. Ray, Texas Law of Evidence Civil and Criminal §§ 1144, 1145, 1146 (Texas Practice 2d ed. 1958).

■ And the allegations and statements made by the party's authorized attorney are that party's statements. Even pleadings of a party in other causes of action which contain statements inconsistent with that same party's present position are receivable and admissible as admissions.

■ Interestingly and in accordance with ineluctable logic, even when a pleading is abandoned, superseded or amended, such a pleading is deleted as a formal judicial admission. Such a pleading no longer actually binds the pleader in the sense that that pleading litigant is prevented from disputing or explaining away the facts set out in the superseded pleadings.

■ Nevertheless, these "unlive", "dead" pleadings remain forceful as an important crucial statement once seriously made. Hence, like any other utterance or statement, if the abandoned pleading is inconsistent with the party's (here Mary Lowe's) present position at trial, then the abandoned pleading is admissible and receivable into evidence as an admission and this rule is recognized even though the "dead" pleading is not verified and bears no filemark. This principle has been observed as a basic rule of evidence for a lengthy time in Texas practice. *See* Tex. R.Civ.Evid. 611(b), 613(a)(b), 801(e)(1)(2).

■ *The record clearly sets out that Mrs. Lowe had admitted and conceded during a bill of exception that she had at a previous time taken the position that 100 percent of her disability was due to the October 5th, 1987, personal injury and occurrence.* A bill of exception is properly in the record before us:

## BILL OF EXCEPTION

MR. BRIDGER:

Q. Mrs. Lowe, have you ever claimed that it was the accident of October 5th, 1978 that was the *cause* of your disability?

*Not a cause but the cause of your disability?*

A. Well, considering the fact that I couldn't work after then, I probably did.

Q. Okay. So at least on another occasion, outside this courtroom you have taken the position *that the disability that you suffered and are now suffering was because of and solely because of October 5th, 1987.*

You've taken that position outside this courtroom?

A. *It's like I said, I probably have.*

Q. Okay. You don't remember one way or another whether you did?

A. *I'm probably—I'm sure I have.*

Q. You're sure you have?

A. Yes.

Q. Okay. Have you also taken the position outside this courtroom that *it was the accident of October 5th, 1987 which was the sole cause of your being unable to perform the usual tasks of your job?*

A. *I'm sure I said that too because I could work up until then.*

Q. Okay. So outside this courtroom here today you've claimed that *the accident of October 5th was the sole cause of your not being able to perform the usual tasks of your job or the usual tasks of a workman. Is that correct?*

A. *Like I said, I'm sure I have.*

(emphasis added)

The trial court fell into reversible error by refusing to permit into evidence certain crucial exhibits that were clearly admissible. These issues and refused exhibits, concerning other pleadings, are discussed because appellant has brought forward a correct, precise point of error on these critical questions. In a realistic, pragmatic sense, appellant really was not permitted to effectively cross-examine appellee. Cross-examination is the real, effective tool to get at the truth. The evidence in the Bill of Exception was admissible.

There exists other very well-reasoned, persuasive, and logical opinions by other courts of appeals in Texas that have carefully considered these issues. We have merely fol-

lowed established law—established by our Supreme Court.

Our Ninth Court Chief Justice was merely following legislative intent and settled law. Initially, the Texas Pattern Jury Charges had the approbation, approval, and favorable imprimatur of the then distinguished Chief Justice of Texas. We do not see that such approval has been withdrawn. In a second edition of the Pattern Jury Charges (Volume 2), we note that PJC 24.06 is still in existence and in full force and effect as an approved pattern charge to the jury.

PJC 24.06 deals specifically with contributions from subsequent compensable injuries. It would serve no useful purpose to list the names of the various committee members that contributed many hours of scholarly and arduous labor to the formation of the approved jury charges. We note, however, that the members were balanced between both sides of the docket and were eminent, well-respected and outstanding members of the legal profession.

As to the Second Edition, the State Bar of Texas, writing through the Honorable James B. Sales, as President, specifically pointed out that the Pattern Jury Charges covering workers' compensation matters were composed by a committee of outstanding volunteers. These Pattern Jury Charges are the result of an exemplary commitment to service on behalf of the legal community *for the benefit of litigants* and the people of Texas. President Sales specifically notes that arduous revision and updating over the last years have produced these invaluable guides to the preparation of proper jury charges and jury questions.

 President Sales concluded with this salient and compelling sentence: *"Their labor will undoubtedly enhance the quality of client services in the workers' compensation cases throughout the State."* The comment following PJC 24.06 states that this pattern jury charge 24.06 should be used if there is evidence of the existence of a subsequent, compensable general injury that has contributed a percentage toward the worker's general incapacity resulting from the injury sued upon. That situation is precisely our case sub judice.

The scholarly and well-balanced members of the committee who wrote the pattern jury charges on workers' compensation questions and issues approve of *St. Paul Fire & Marine Ins. Co., supra; Alvarez v. Texas Employers Insurance Ass'n,* 450 S.W.2d 114 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.), stating that these cases allow and require contribution for subsequent compensable injuries that occur after the date of the injury for which the compensation is presently sought. *See and compare Jones v. Pacific Employers Ins. Co., supra.*

Also noteworthy is PJC 24.08 entitled "Contribution for Multiple Previous and/or Subsequent Compensable Injuries." Again the source and core of this pattern jury charge is TEX.REV.CIV.STAT.ANN. art. 8306 § 12c(a) (Vernon Supp.1989). Again the authors of the PJC's cite with approval *Murphree, Alvarez,* and *Jones.*

Also, between about February 2nd up until the date of October 5, 1987 (the date of the second injury of Mrs. Lowe), Mrs. Lowe stated she was able to do her job, including the taxing efforts of lifting trays weighing anywhere from 25 to 30 to 35 or 40 pounds (and even up to 70 pounds). Sometimes this lifting ranged up to 100 times per day. And between the dates of February 2nd and October 5, 1987, Mrs. Lowe was not taking prescription pain medication. She was not hospitalized. She was not seeking the help of doctors. Mrs. Lowe stated:

Q. So for that nine month period—I just want to make sure I'm correct—you did your regular work at your regular pay with your regular hours and did all the tasks that you were asked to do; is that correct?

A. That's correct.

Unquestionably, the nine month period referred to was from February 2nd to October 5, 1987. As the record reveals, on October 5th Mrs. Lowe received another personal, accidental injury to her back while she was attempting to lift a pan or tray of meat products. This October 5th injury was made the basis of a separate workers' compensation case wherein by pleading she claimed

that she suffered total, or in the alternative, partial incapacity as a result of the October injury. In that suit Mrs. Lowe sued a different carrier; namely, Employer's Insurance of Wausau which was at the October date the worker's compensation carrier for Giant Supermarket.

Although after the first injury Mrs. Lowe was rapidly able to return to her regular work and regular job duties, it is significant that she never returned to work after she sustained her second personal injury. The second October injury caused additional medical problems and additional symptoms and new pains in new and different parts of her body. She saw only a general practitioner for her first injury and after she was quickly released from her first doctor she did not seek other doctors.

On the other hand, after the October 5th injury, she began constant, long-term medical care from specialists and underwent certain sophisticated testings and also received certain invasive medical techniques such as an epidural block in an attempt to alleviate her pain. In view of Mrs. Lowe's testimony and the testimony of one Dr. Archambault and in view of her medical treatment and new discomfort and new pain and disabilities following the October 5th personal injury, the insurer here, Westchester Fire, had the right under settled law to have these issues of contribution relevant to the second injury submitted to the jury.

In this appeal and in her unequivocal pleadings below, Mrs. Lowe claimed that the January 1987 accident was in law the cause of her disability. In her pleadings she unequivocally stated that her injuries of January rendered her unable to do the ordinary and usual tasks of a worker to such an extent that she cannot both get and keep employment performing the ordinary, usual tasks of a worker. And, therefore, she is totally and permanently incapacitated.

She further alleged that she was entitled to receive $224 per week for 401 weeks, or, in the alternative, she was entitled to recover weekly compensation for a period of time less than 401 weeks and for a permanent loss of her wage earning capacity for her injuries sued upon arising from the January injury.

The carrier pleaded that the plaintiff's incapacity and/or disability was due solely or at least in part to prior and/or subsequent compensable injury or injuries. The carrier also pleaded that it was entitled to a credit or contribution. Thus, we find that the issues and questions denied to the carrier were properly pleaded; they were raised by the evidence and the same constituted a statutory defense—submission was required.

Furthermore, the requested, but refused issues were substantially correct and were timely submitted to be placed in the charge. The requested issues were definitely substantially correct inasmuch as they tracked the language of Texas Pattern Jury Charge 24.06. Error was certainly preserved. This error was reurged in the appellant's motion for new trial.

The jury found that Mrs. Lowe had sustained total incapacity from January 15, 1987 to February 2, 1987. But interestingly the jury found the duration of her partial incapacity *began on October 5, 1987, and was permanent.* Thus, by necessary implication and irrefutable logic, the jury found that Mrs. Lowe had no incapacity, either total or partial, from the date of February 2, 1987, to the date of October 5, 1987. Thus the requested issues were especially relevant and material to this record and to this particular verdict. Duplicate or double recovery is proved. *See and compare also Claridy v. Texas Employers' Insurance Assn,* 795 S.W.2d 228, 229 (Tex.App.—Waco 1990, writ denied).

In *Claridy,* the court held, in substance, that the application of the statute concerning contribution of subsequent injuries to incapacity prevents a double recovery by the employee and reduces the insurance carrier's liability to the extent of the injury that was actually insured by it. That language and holding is especially governing in this appeal because of the specific findings in the jury's verdict as set out above.

Unquestionably, there were other errors committed in the trial but having decided the above errors, we feel that they are dispositive of this appeal.

In view of the entirety of the record, in view of the verdict of the jury, the affirmative testimony of Mrs. Lowe, and the long standing Supreme Court decisions coupled with the approved Pattern Jury Charges of about 13 years standing, the writer opines that the stringent, stinging language of the motion for rehearing filed by Hon. Thomas P. Roebuck was of a most unreasonable type and of unreasonableness and was altogether inappropriate.

After carefully reanalyzing and reviewing this record, we find no reason to deviate from our holding in our original opinion filed on August 25, 1994.

If our Ninth Court of Appeals possessed the correct amount of judicial "chutzpah", we would order the Clerk to strike the filemark on appellant's motion for rehearing and decline to consider or write upon same, such action being taken only on the motion for rehearing of the appellant, thereby leaving in full force and effect the Ninth Court's opinion written by the Chief Justice but disallowing an appeal to the Supreme Court. Following this justifiable procedure, the appellee would have no basis upon which to file an application for writ of error in the Supreme Court of Texas.

However, we have undertaken to write upon Mrs. Lowe's Motion for Rehearing and we overrule the same, demonstrating to Mrs. Lowe and her attorney of record that it is our desire to afford to them every opportunity to obtain a complete review of our opinions in the Supreme Court of Texas.

OVERRULED.

BURGESS, J., dissents without written opinion.