**WESTCHESTER FIRE INSURANCE COMPANY, Appellant,**

v.

**Mary T. LOWE, Appellee.**

No. 09–93–024 CV.

Court of Appeals of Texas, Beaumont.

Submitted Jan. 13, 1994.

Decided Aug. 25, 1994.

Rehearing Overruled Nov. 23, 1994.

John W. Bridger, Theodore P. Ray, Strong, Pipkin, Nelson & Bissell, Beaumont, for appellant.

Thomas P. Roebuck, Jr., Bush, Lewis, Ramsey & Roebuck, Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This workers' compensation appeal arises from an on-the-job injury suffered by appellee, Mary T. Lowe, on January 15, 1987 ("first injury"). Appellee suffered a second on-the-job injury on October 5, 1987 ("second injury"). This second injury resulted in a second lawsuit against another insurance carrier. Appellant, Westchester Fire Insurance Company, is the insurance carrier as to the first injury. Trial was before a jury and based upon the jury's verdict the trial court entered judgment favorable to appellee in the amount of $73,298.46 plus post-judgment interest at a rate of 10 percent per annum. Westchester appeals. We reverse and remand this case to the trial court for full trial on the merits.

Factually, appellee, Mary T. Lowe, testified that she began working at Giant Super Market in "the latter part of '80 or the early part of '81." Appellee injured her back on January 15, 1987. Appellee's job duties required that she wrap and carry meat to and from the display section. These job duties required that she lift trays from 12 inches off the floor to a height above her head. These trays weighed between 25 and 40 pounds. Appellee testified that she was required to lift such trays over 100 times in an 8 hour day. On the date she was injured, appellee was allowed to go home and rest, however, she returned to work the next day. Later appellee complained of pain and was sent to a doctor for diagnosis and treatment. Appellee was diagnosed as having a severe back strain and was treated with ultrasound, heat

packs, and massages. Appellee was also confined to bed rest for 9 days with no medication being prescribed. Following this 9 days of bed rest, appellee and her doctor agreed that she could return to regular work duty.

On October 5, 1987, appellee again injured her back by lifting a pan of meat weighing between 25 and 30 pounds. Following this second injury, appellee sought medical treatment from Dr. Hirshauer who prescribed physical therapy and muscle relaxants as medication. A CAT Scan and MRI were performed. Appellee began seeing Dr. Archambault in Port Arthur, Texas. Dr. Archambault prescribed therapy along with two injections of cortisone. Appellee also had two epidural blocks. The injections alleviated appellee's pain only temporarily.

Appellee testified that she was unable to do simple bends since the pain was piercing and severe. Appellee was unable to pick up her small granddaughter or do housework such as mopping, sweeping or vacuuming. Appellee stated that she was in pain all the time and that she could not even dress or wash herself without having pain.

Dr. Archambault testified via deposition to the effect that the subsequent injury contributed to appellee's present condition by making appellee's condition worse.

The trial court submitted the following four issues to the jury:

1. Did Mary T. Lowe receive an injury on or about January 15, 1987, in the course of her employment with Giant Super Market that was a producing cause of any total and/or partial incapacity?

A person may not be totally and partially incapacitated at the same time.

Answer "Yes" or "No" to each.

| Total incapacity | Yes |
|---|---|

| Partial Incapacity | Yes |
|---|---|

If you answered "Yes" to total incapacity in Question 1, then answer Question 2. Otherwise, do not answer Question 2.

2. What is the duration of any total incapacity you have found?

A person may not be totally and partially incapacitated at the same time.

Answer by finding the beginning date of total incapacity, and if incapacity is temporary, then by finding the ending date, but if incapacity is permanent, by finding "Permanent."

| Beginning date | Jan 15, 1987 |
|---|---|

| Ending date or "Permanent" | Feb 2, 1987 |
|---|---|

If you have answered "Yes" to partial incapacity in Question 1, then answer Question 3. Otherwise, do not answer Question 3.

3. What is the duration of any partial incapacity you have found?

A person may not be totally and partially incapacitated at the same time.

Answer by finding the beginning date of partial incapacity, and if incapacity is temporary, then by finding the ending date, but if incapacity is permanent, by finding "Permanent."

| Beginning date | Oct 5, 1987 |
|---|---|

| Ending date or "Permanent" | PERMANENT |
|---|---|

If in answer to Question 3 you have found any period of partial incapacity, then answer Question 4. Otherwise, do not answer Question 4.

4. What is Mary T. Lowe's average weekly earning capacity during partial incapacity?

The weekly earning capacity of a partially incapacitated worker must be less than her average weekly earnings before her injury.

| Answer in dollars and cents. | $4.25 |
|---|---|

Appellant brings to this Court six points of error. In view of our determination that this case should be reversed and remanded to the trial court, we shall only address appellant's point of error one which contends trial court error in refusing to submit the defendant's proposed questions for the jury concerning the subsequent compensable injury contribution issue.

Texas has long recognized that a prior injury may reduce a worker's compensation carrier's liability when a worker suffers a subsequent compensable injury, which com-

bined with the prior injury to produce a condition of incapacity. TEX.REV.CIV.STAT. ANN. art. 8306, § 12c(a) (Vernon Supp.1989) repealed by Act of December 11, 1989, 71st Leg., 2nd C.S., Ch. 1, § 16.01(7), 1989 Tex. Gen.Laws 1, 114, current version at TEX.LAB. CODE ANN. §§ 403.006, 408.084, 408.162 (Vernon Pamph.1994). Cases interpreting the before mentioned repealed statute, have allowed contribution only if the other injury was compensable under the applicable workers' compensation law. *St. Paul Fire & Marine Ins. Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744, 749 (1962).

■ The issue squarely before this Court is whether the law of the State of Texas permits a subsequent compensable injury jury question.

Two cases have directly addressed this question; both hold that the carrier is entitled to a subsequent compensable injury contribution issue. *See Claridy v. Texas Employers' Ins. Ass'n*, 795 S.W.2d 228 (Tex. App.—Waco 1990, writ denied), and *Jones v. Pacific Employers Ins. Co.*, 416 S.W.2d 580 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.). Each of these cases rely upon the Texas Supreme Court's decision in *Murphree*.

Appellee contends that nowhere in the statute is it indicated that an injured employee who is suing on a compensable injury and has a subsequent compensable injury is entitled to a credit for the subsequent compensable injury. Further, that the statute simply does not provide for a deduction for the disability caused by a subsequent compensable injury. We hold this premise to be incorrect.

Article 8306, section 12c(a) provides:

If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the "Second Injury Fund," here-

inafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries. Provided further, however, that notice of injury to the employer and filing of a claim with the Industrial Accident Board as required by law shall also be deemed and considered notice to and filing of a claim against the "Second Injury Fund".

In *Claridy*, the trial court submitted the subsequent compensable injury contribution issue and the jury assigned 65% of the plaintiff's incapacity to the subsequent compensable injury. In affirming the trial court's judgment, which reduced the plaintiff's recovery by 65%, the Waco Court of Appeals declared:

Nevertheless, although the wording of the statute refers expressly to prior injuries for contribution, the application of the statute, as presently worded, has been interpreted as extending to subsequent injuries as well. *See St. Paul Fire & Marine Insurance Company v. Murphree*, 163 Tex. 534, 357 S.W.2d 744 (1962); *Jones v. Pacific Employers Insurance Company*, 416 S.W.2d 580 (Tex.Civ.App.—Eastland 1967, writ ref. n.r.e.); *General Ins. Corporation v. Hughes*, 193 S.W.2d 230 (Tex.Civ. App.—Dallas 1946, no writ). According to the cases, the application of the principle of the statute to contribution of subsequent injuries to incapacity prevents a double recovery by the employee and reduces the insurance carrier's liability to the extent of the injury actually insured. *Murphree*, 357 S.W.2d at 748; *Jones*, 416 S.W.2d at 582–83.

795 S.W.2d at 229.

We believe *Claridy* to be authority in our present case requiring the submission of the issue requested by appellant.

In *Jones*, the trial court submitted both prior and subsequent compensable injury contribution issues and the jury assigned 5% to the first prior injury, 5% to the second prior injury, 40% to the last prior injury, and 40% to the only subsequent injury (i.e., a total of 90% to other compensable injuries). 416 S.W.2d at 581. The trial court entered judgment for only 10% of the incapacity. In

upholding the reduction of the subsequent compensable injury, the Eastland Court of Appeals explained:

> The reason for limiting liability of the employer's insurer by deducting the 40% contribution to present incapacity by a later injury is just as valid here as the limitation expressly stated to be applicable to prior compensable injuries in section 12c. In this case the record shows that the trial court knew that appellant had previously settled for said last injury with another employer's different insurance carrier for that subsequent injury, which the jury found contributed 40% to appellant's present incapacity. If the court had included said 40% in the recovery granted it would have allowed a double recovery for the same accident and incapacity. Furthermore, it would cause appellee to pay for 40% of appellant's incapacity caused by a subsequent injury while he was employed by a different employer and insured by a different insurer. We do not believe that the law contemplated such recovery. See 63 Tex.Jur.2d 48, 49; Hartford Accident and Indemnity Company v. McCardell, (Sup.Ct.) 369 S.W.2d 331, 343.

416 S.W.2d at 582–583.

In the case at bar, appellee Lowe conceded that she suffered a second compensable injury on October 5, 1987, and that the second compensable injury contributed to her disability and/or incapacity. Appellee Lowe concedes that she "again injured" her back on October 5, 1987; that she never denied having a second compensable injury, nor did she deny that she had some lingering disability from that injury; and appellee Lowe finally stipulated that the incident on October 5, 1987, was a compensable accident.

The submission of questions dealing with contributions from subsequent compensable injuries has become accepted and acknowledged to the point that Jury Questions dealing with these type issues appear in Texas Pattern Jury Charge 24.06. Appellant submitted its proposed jury questions which track the language of Texas Pattern Jury Charge 24.06, same being refused by the trial court. We hold that this constituted reversible error in that appellant was denied its full day in court.

■ We further hold that there was sufficient evidence before the jury to require the trial court's submission of a contribution question. During trial, appellee Lowe repeatedly indicated that the October 5, 1987 injury caused her additional problems and incapacity, including, forcing her to stop work permanently (as opposed to missing 9 days returning to work full duty for 9 months); requiring constant, long-term medical treatment by specialists (previously she had only seen a general practitioner for a few visits over the course of two weeks and had not seen a doctor or received treatment for her back for almost 9 months); her pain became worse; and her pain extended into her right flank and leg (previously, her pain was confined to her back).

Dr. Archambault rendered his opinion that "any lingering disability" that Ms. Lowe was suffering was caused by the October 5, 1987 accident. The jury heard expert medical testimony which, at least, indicated that Ms. Lowe's disability was caused by her second accident. This evidence was sufficient to require the trial court's submission of appellant's requested issue. In view of our reversal and remand of this case for full trial on the merits, we need not discuss appellant's burden of proof requirements as set forth in *Transport Ins. Co. v. Mabra,* 487 S.W.2d 704, 707 (Tex.1972). Suffice it to say that the evidence clearly required a submission of appellant's requested jury question.

Appellee, during oral argument, for the first time, cited the case of *Southern Underwriters v. Grimes,* 146 S.W.2d 1058 (Tex.Civ. App.—San Antonio 1940, writ dism'd, judg. cor.), arguing that *Grimes* was directly on point regarding the primary issue of whether the trial court erred in refusing to submit a subsequent compensable injury contribution issue. We hold, without discussion or analysis, that *Grimes* is not authoritative to the case before us. Appellant's point of error one is sustained and the judgment of the trial court is reversed and this cause is remanded to the trial court for full trial on the merits.

REVERSED AND REMANDED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority uses *Claridy v. Texas Employers' Ins. Ass'n.*, 795 S.W.2d 228 (Tex.App.—Waco 1990, writ denied), *Jones v. Pacific Employers Ins. Co.*, 416 S.W.2d 580 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e), and 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 24.06 (1989) as authority for its holding. While each of these may be considered persuasive, they certainly are neither controlling nor binding upon this court.

These authorities are nothing more than a judicial "house of cards" built upon dictum from *St. Paul Fire and Marine Insurance Co. v. Murphree*, 163 Tex. 534, 357 S.W.2d 744 (1962). *Murphree* was an appeal by the insurance carrier where issues were submitted on the percentage of contribution of both previous and subsequent injuries. The propriety of these issues was not before the court. The language relied upon: "Evidence showing the nature and extent of these injuries was introduced before the jury. Such evidence was admissible, inasmuch as it is the extent of the prior and subsequent injuries that reduces the insurer's liability, not what the employee was paid in settlement of his claim growing out of the injury.", 357 S.W.2d at 748, is solely in relation to the issue of whether the settlement amounts were admissible, thus it is pure dictum as to the issue before this court.

The San Antonio Court of Appeals in *Liberty Mutual Ins. Co. v. Peoples*, 595 S.W.2d 135 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e), discussed the various versions of TEX.REV.CIV.STAT.ANN. art. 8306, § 12c(a) and the case law interpreting it. Prior to 1917 there was a "full responsibility rule" which made a compensation carrier liable for the entire disability resulting from a compensable injury without reference to whether the disability resulted from a combination of such compensable injury and a preexisting disability. This rule was abolished and from 1917 until 1971 there was an apportionment statute. In 1971 the legislature abolished the percentage contribution defense. In 1977 the apportionment rule was reinstated. The court noted while there were no cases discussing the applicability of the 1971 amendment to subsequent injuries, there were three cases prior to the 1971 amendment which discussed the effect of such subsequent injuries. They referenced *Southern Underwriters v. Grimes*, 146 S.W.2d 1058, 1061 (Tex.Civ.App.—San Antonio 1940, writ dism'd, judgm't cor.), and noted the court said "that the apportionment rule permitting reduction of compensation awards because of disability produced by previous injuries 'plainly refers to injuries occurring before or concurrently with the injury for which compensation is sought and not afterwards.'" 595 S.W.2d at 135. They also mentioned *St. Paul Fire and Marine Insurance Co. v. Murphree* as follows: "In 1962 the Supreme Court said ... that evidence of the nature and extent of previous and later injuries as admissible because 'it is the extent of prior and subsequent injuries that reduces the insurer's liability.' 357 S.W.2d at 748. This statement, which is clearly dictum insofar as it relates to later injuries was uttered without mention of the contrary dictum in *Grimes*." They went on to discuss *Jones v. Pacific Employers Insurance*, and reached the conclusion the *Jones* case was based partially on the dictum in *Murphree*. The court went on to say: "It can be persuasively argued that neither the *Murphree* dictum nor the *Jones* holding was based upon an interpretation of the meaning of 'previous injury' in the pre–1971 version of 12c. Unless we are willing to adopt an indefensively strained construction of 'previous injury' as including 'subsequent injury', it is clear that Section 12c, whether in its 1971–1977 form or its pre–1971 version has no application to later injuries." 595 S.W.2d at 139–140. Although a 1971–1977 case, the opinion is well-reasoned and discussion is persuasive.

The holding in *Claridy* is plainly based upon *Murphree* and *Jones*. The court stated at 229: "Nevertheless, although the wording of the statute refers expressly to prior injuries for contribution, the application of the statute, as presently worded, has been interpreted as extending to subsequent injuries as well," citing *Murphree* and *Jones*.

The pattern jury charge comment states: "The statute appears to allow contribution only for a previous compensable injury. . . .

These cases also allow contribution for subsequent compensable injuries that occur after the date of the injury for which compensation is sought," citing *Jones* and *Murphree.*

Clearly, the use of the *Murphree* dictum has established a body [1] of law that is questionable. While the committees which draft the various pattern jury charges perform yeoman's service to the bench and bar, they are not necessarily self-authoritative on the issues. In fact, they note the cases they rely upon. Hence if those cases are faulty, so become the pattern jury charges.

In summary, the majority had two paths to choose; the *Claridy/Jones* path or the *Grimes/Peoples* path. They, in my view, chose the incorrect one. I would affirm the court below.

---

1. If two cases can be considered a body of law.