ISHIN SPEED SPORT, INC., Appellant,

v.

Johnny **RUTHERFORD** and Johnny Rutherford, Inc., Appellees.

No. 2–95–169–CV.

Court of Appeals of Texas, Fort Worth.

Nov. 7, 1996.

Neil D. Kelly, Stephen B. Schulte, Hughes & Luce, L.L.P., Houston, for appellant.

H. Allen Pennington, Jr., Law, Snakard & Gambill, Fort Worth, for appellees.

Before CAYCE, C.J., and BRIGHAM and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Johnny Rutherford individually and a corporation known as Johnny Rutherford, Inc. sued Ishin Speed Sport, Inc. for breach of contract and resulting loss of profits. The jury found for the plaintiffs and the trial court entered judgment awarding Rutherford and Rutherford, Inc. $226,388.87, plus $36,954.10 in prejudgment interest and $33,848.71 in attorney's fees. Ishin appeals, and we affirm.

Although Ishin brings fifteen points of error, its appeal presents three principal issues: (1) whether the trial court abused its discretion by erroneously refusing to submit Ishin's requested jury instructions; (2) whether there was legally or factually sufficient evidence to support the jury's answers and the court's judgment that a contract either existed or was agreed to by and between Rutherford individually or Rutherford, Inc., and Ishin; and (3) whether there was legally or factually sufficient evidence to support the jury findings and judgment awarding Rutherford and Rutherford, Inc. damages for lost profits.

### The Initial Concept

Richard Respess, M.D., created and was president of Ishin Speed Sport, Inc. for the purpose of developing an automobile racetrack and driving technology center in Tarrant County. Ishin also was involved in refurbishing Texas World Speedway in College Station, Texas. Dr. Respess asked Johnny Rutherford, a Fort Worth native and a professional race car driver who is a three-time winner of the Indianapolis 500, to agree to assist the Ishin endeavors by creating the "Johnny Rutherford Performance Racing and Driving School" at the Texas World Speedway.

Ishin concedes that early in 1991 Dr. Respess and Johnny Rutherford tentatively agreed that in exchange for being allowed to use the Rutherford name in promoting Ishin's enterprises, Ishin periodically would pay Johnny Rutherford a commission on the income generated by the driving school and related merchandise sales. Johnny Rutherford insists that his commission was to be 25% of the school revenues, but in no event less than a guaranteed compensation of $100,000 for one year. By contrast, Ishin contends that the amount of commission payable to Johnny Rutherford was never agreed upon, and the only agreement was that a guaranteed minimum of $100,000 per year would be paid against commissions. Ishin also contends that although Johnny Rutherford individually would be doing the work for Ishin, only Rutherford, Inc. was the intended party to the agreement.

Nevertheless, in February 1991 Ishin began paying Johnny Rutherford installments toward the guaranteed minimum by paying him $4,166.67 every two weeks. Ishin contends that it paid no commissions to Ruther-

ford because he wanted the commissions computed on the driving school's *gross* profits, while Ishin wanted commissions to be paid only on the *net* profits. Ishin asserts that by September 1991 Johnny Rutherford had not met his obligation to furnish a business plan and curriculum for the driving school. In August 1991, experiencing cash flow problems, Ishin needed to reduce costs and stopped paying Johnny Rutherford. However, Ishin admits that it did not notify Johnny Rutherford that his services were no longer needed.

In January 1992, Johnny Rutherford did present Ishin with a business plan for the driving school. In the plan, Rutherford estimated that he would be entitled to a 25% commission on projected revenues of $1.8 million from the school's tuition and $200,000 from merchandise sales during the first year of operation. Ishin did not pay, and Rutherford and his corporation filed suit seeking damages.

### The Contract

In answer to question number 1 of the court's charge, the jury found that Johnny Rutherford and Ishin had agreed that Ishin would pay Johnny $100,000 and 25% of gross tuition, fees, and merchandise in return for his commitment to set up, develop, promote, and operate an automobile driving school. The question included the following instruction to the jury:

> To form a valid agreement, the parties must have the same understanding of the subject matter of the agreement and all its essential terms.
>
> In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

With an identical instruction, the jury answered "yes" to question number 4, finding that Ishin had agreed to pay Rutherford, Inc. the $100,000 and 25% commission.

By its first, third, and fourth points of error Ishin asserts either that there is no evidence to support the existence of a contract between Ishin and Johnny Rutherford individually or that the evidence of it is factually insufficient.

By its fifth, seventh, and eighth points of error Ishin asserts either that there is no evidence to support the existence of a contract between Ishin and Johnny Rutherford, Inc. as found by the jury in question 4, or that the evidence of it is legally or factually insufficient. We will address points of error one, three, four, five, seven, and eight as a group because they present related issues.

First, we note that in determining a "no evidence" point, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993).

A "no evidence" point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362–63 (1960). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander*, 824 S.W.2d 555, 556 (Tex.1992).

Next, we note that an assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the

answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination and, if reversing, to detail that evidence in the opinion. *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex.1993).

■ There was no written contract between the parties, and Ishin argues that Rutherford presented no evidence, or at best only a scintilla, that Ishin ever agreed upon the amount of compensation that would be paid Rutherford in their business relationship. Ishin does concede in its brief that Rutherford testified that he believed that he and Dr. Respess had made an agreement, but Dr. Respess testified there was no agreement.

■ Clearly, an offer and its acceptance in strict compliance with the offer's terms are essential to the creation of a binding contract. *American Nat'l Ins. Co. v. Warnock*, 131 Tex. 457, 114 S.W.2d 1161, 1164 (1938); *Smith v. Renz*, 840 S.W.2d 702, 704 (Tex.App.—Corpus Christi 1992, writ denied). However, even if an offer and acceptance are not recorded on paper, dealings between parties may result in an implied contract where the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement. *Smith*, 840 S.W.2d at 704; *City of Houston v. First City*, 827 S.W.2d 462, 473 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Accordingly, the parties' conduct may convey an objective assent to the terms of an agreement, and whether their conduct evidences their agreement is a question to be resolved by the finder of fact. *Estate of Townes v. Townes*, 867 S.W.2d 414, 419 (Tex. App.—Houston [14th Dist.] 1993, writ denied). If the finder of fact determines that one party reasonably drew the inference of a promise from the other party's conduct, then that promise will be given effect in law. *E–Z Mart Stores, Inc. v. Hale*, 883 S.W.2d 695, 699 (Tex.App.—Texarkana 1994, writ denied).

At the start of their relationship, Johnny Rutherford met with a racing promoter, Buddy Boren, and Dr. Respess to discuss Rutherford's participation in Ishin's proposed operation, which included the driving school. Rutherford testified that he initially asked for annual compensation of $400,000, but at a later meeting, he and Dr. Respess agreed on compensation of $100,000 and a 25% commission on the school revenues. At that meeting, Dr. Respess refused Rutherford's request for a written contract, but plaintiff's exhibit 24 is a typewritten memo dated June 24, 1991 sent from Dr. Respess to Johnny Rutherford. That exhibit states that Ishin is paying Rutherford $100,000 per year against a commission. Rutherford also testified that his work for the racing and driving school was to include using his name and reputation to promote the operations, preparing a business plan, and persuading the manufacturers of automobiles and component parts to supply cars, parts and accessories as consideration for promoting those products in the Ishin/Rutherford business.

He told the jury that in 1991, from February until June 24, he was doing the work he had agreed to do. He made the arrangements with the manufacturers for the use of their products. Rutherford was to be the chief instructor at the driving school. He testified that he contacted drivers about becoming instructors for the school and told the jury there were "four or five different categories of classes that you could take," from beginner to intermediate to the final advanced racing course. He testified that he and Dr. Respess had a definite meeting of the minds about offering the courses. Rutherford also told jurors that he contacted skilled professionals who operated other driving schools evaluated them, and prepared and gave Dr. Respess a business plan.

Rutherford testified that in a meeting on June 24, 1991 he told Dr. Respess that their contract should be reduced to writing, but that Respess refused. Dr. Respess testified that the focus of that meeting was to keep Johnny Rutherford "on board," that he knew that Rutherford was carrying on the work of contacting potential sponsors for their business, that in his own mind Respess did not separate Rutherford individually from Rutherford, Inc., but that he knew that Johnny expected to be paid for the work he was doing. Dr. Respess told jurors that the in-

tention was to pay Rutherford a commission, but that the business failed for lack of sufficient funding expected from Japanese investors, and that until November 1991, he continued to tell Rutherford that he would be paid the money he was owed.

At trial, Rutherford itemized the damages sought in plaintiff's exhibit 26, which includes the unpaid portion of the $100,000 and sums he alleged to be due him on the 25% commission. The exhibit was admitted in evidence without objection by Ishin. Ishin's marketing director, Slick Johnson, testified without objection that Dr. Respess told him that at the June 24, 1991 meeting with Rutherford, an agreement was made to pay Rutherford "a twenty-five percentage of the revenue."

Having reviewed the evidence presented on the issues jurors were asked about in questions 1 and 4 of the charge, we conclude that the jury had sufficient evidence from which to decide whether the course of dealing between Johnny Rutherford individually and on behalf of his corporation with Ishin, represented by Dr. Respess, manifested an objective assent by those parties to the terms of the agreement asked about in questions 1 and 4. *See City of Houston,* 827 S.W.2d at 473. On the evidence, the jury was reasonably entitled to consider that Johnny Rutherford and his corporation performed the work expected of them after reasonably drawing the inference that Ishin had promised to pay them $100,000 and a 25% commission on gross tuition, fees, and merchandise. The jury resolved those issues by finding that the parties' own conduct evidenced their agreement, and the law requires that the promise be given effect. *E–Z Mart Stores, Inc.,* 883 S.W.2d at 699; *Estate of Townes,* 867 S.W.2d at 419.

Points of error one, three, four, five, seven, and eight are overruled.

### Charging the Jury About a Contract

■ The second point of error attacks the trial court's refusal to submit question 1 in words proposed by Ishin and to add the following language to the instruction for that question:

> To be enforceable, an agreement must be reasonably definite and certain. Failure to

agree on or include an essential term renders an agreement unenforceable.

Because the sixth point of error presents an identical challenge to jury question 4 and its instruction, we will consider both points together.

■ Although the second and sixth points of error assert that the trial court erred by not submitting Ishin's requested wording for the respective questions (1 and 4), Ishin's arguments under the second and sixth points do not address the wording of the questions. Ishin's arguments only discuss the court's refusal to include the requested instruction with each question. An argument must include a discussion of the facts and authorities relied on to maintain the point at issue. TEX.R.APP.P. 74(f). Accordingly, because the arguments made under points two and six do not tell us why Ishin objects to the way the trial court worded questions 1 and 4, we conclude that Ishin has waived any complaints about the wording of those questions. We will only consider Ishin's arguments about the instructions that Ishin wanted for the jury.

■ Explanatory instructions should be submitted when in the sole discretion of the trial judge they will help the jurors understand the meaning and effect of the law and the presumptions the law creates. *Hamblet v. Coveney,* 714 S.W.2d 126, 129 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd. n.r.e.). A trial court's refusal will not be overturned on appeal unless the court abused its discretion. *Magro v. Ragsdale Bros., Inc.,* 721 S.W.2d 832, 836 (Tex.1986). No abuse of discretion is shown unless the requested instructions were so necessary to enable the jury to render properly a verdict that the court's refusal probably did cause rendition of an improper verdict. *Harris County v. Bruyneel,* 787 S.W.2d 92, 94 (Tex. App.—Houston [14th Dist.] 1990, no writ); *Steinberger v. Archer County,* 621 S.W.2d 838, 841 (Tex.App.—Fort Worth 1981, no writ).

Ishin contends that because it copied the requested instructions from the *Texas Pattern Jury Charges,* the trial court's refusal to submit them was error and an abuse of dis-

cretion. To support that argument, Ishin cites *Westchester Fire Ins. Co. v. Lowe*, 888 S.W.2d 243, 250 (Tex.App.—Beaumont 1994, no writ) (op on reh'g) and *Westchester Fire Ins. Co. v. Lowe*, 882 S.W.2d 654, 657 (Tex. App.—Beaumont 1994, no writ), *reh'g overruled*, 888 S.W.2d 243 (Tex.App.—Beaumont 1994). The *Westchester* cases do not stand for the principle that solely because an instruction is copied verbatim from the *Texas Pattern Jury Charges* its inclusion in a jury charge is mandated. Instead, each of the *Westchester* cases held, upon its facts and applicable law, that the jury questions requested should have been granted because the issues they presented were essential to those worker's compensation trials. *Westchester*, 888 S.W.2d at 250 & 882 S.W.2d at 657. Because of that *and* also because the questions were requested in language found in *Texas Pattern Jury Charges*, the appellate court in each case found that those appellants had properly made their requests and preserved error. *Westchester*, 888 S.W.2d at 255 & 882 S.W.2d at 657.

█ For some causes of action, the Texas Supreme Court has expressly approved the use of the forms found in *Texas Pattern Jury Charges* and has disapproved the addition of any other instructions in those actions, no matter how correctly they may state the law. *See Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984) (a products liability design defect case). Otherwise, the forms in *Texas Pattern Jury Charges* are only a guide to assist a trial court in drafting its charges, and those forms do not bind the court. *Keetch v. Kroger Co.*, 845 S.W.2d 276, 281 (Tex.App.—Dallas 1990), *aff'd*, 845 S.W.2d 262 (Tex.1992).

█ Upon the general principle that a proper jury instruction is one that assists the jury and is legally correct, a trial court may personalize or individualize a charge to the facts of the case so the jury can more easily understand the law. *U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 220 (Tex.App.—Waco 1993, writ denied). Trial courts also are given considerably more discretion in submitting instructions and definitions than in submitting questions. *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 776 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Ishin argues that the instructions it requested for questions 1 and 4 were necessary to inform the jury that Rutherford was required to prove that Ishin and Rutherford each agreed and communicated their agreement to all essential terms of the contract and that the terms must be reasonably definite and certain. We conclude, however, that even if the requested instructions had that effect on the jury, the requests do not materially differ from the language submitted by the court's own instruction, because the trial court's versions of questions 1 and 4 already contain all of the essential terms of the disputed contract in a reasonably definite and certain manner. Because the wording requested by Ishin would not have been a material addition or improvement to the instructions that were given, we are not persuaded that the trial court's refusal to give Ishin's requested instructions was an abuse of discretion or that it was calculated to and probably did cause the jury to err in its verdict. We overrule the second and sixth points of error.

### Lost Profits

█ Through points of error nine, eleven, and twelve, Ishin attacks jury question 8 of the charge concerning Rutherford's claim of lost profits. Ishin asserts that there is no evidence or no factually or legally sufficient evidence to support the jury's finding of damages for the claimed lost profits and that the trial court erred by submitting the wrong measure of lost profits damages instead of submitting the measure requested by Ishin.

█ Ishin and Rutherford agree that a party seeking lost profits must prove those profits by competent evidence with reasonable certainty. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). This means that, at a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.

*Id.* However, a party claiming injury from lost profits need not produce in court the documents that support his opinions or estimates. *Id.* The question before us is whether Rutherford's testimony about lost profits was competent and reasonably certain.

Besides telling the jury about his substantial experience as a champion race driver, Johnny Rutherford testified that in reliance on the plans he made with Dr. Respess, he had analyzed the attendance figures, types of courses, and tuition charges of driving schools operated by professionals Bob Bondurant, Bill Buff and Skip Barber, that he had done promotional work and arranged for sponsorship by accessory firms, and that he had contacted instructors who would work under his direction at the school. After giving that background to the jury, Rutherford was offered as an expert witness on racing and driving schools. Over Ishin's objection, Rutherford was accepted by the court as an expert qualified to testify to a reasonable degree of professional certainty about the expected tuition fees, enrollment, and merchandise sales for the driving school.

■ The Texas Supreme Court has emphasized that the requirement that lost profits be proved with "reasonable certainty" is intended to be flexible enough to accommodate the myriad circumstances in which claims for lost profits arise. *Texas Instruments, Inc. v. Teletron Energy Management, Inc.,* 877 S.W.2d 276, 279 (Tex.1994). That was a case in which the product that the parties had planned to sell had never existed and Texas Instruments had failed in its efforts to produce a working model of the product. There the court explained that "reasonable certainty" is not demonstrated when the profits claimed to be lost are largely speculative, as from an activity dependent on uncertain or changing market conditions, or on chancy business opportunities, or on promotion of untested products or entry into unknown or unviable markets, or on the success of a new and unproven enterprise. *Id.* Despite these parameters, when there are firmer reasons to expect a business to yield a profit, recovery for profits allegedly lost will not be denied simply because the business is new. *Id.* at 280. Clearly, the focus is on the experience of the persons involved in the enterprise and the nature of the business activity and the relevant market. *Id.*

■ In that light, Rutherford's many years of successful experience as a professional in auto racing, closely observing the operations of the tracks and driving schools is significant. His evidence includes exhibit 25, admitted with no objection by Ishin. The exhibit is a business plan for the driving school prepared by Rutherford and containing revenue projections based upon his expertise, experience, and discussions with the operators of other professional driving schools. They were the very projections that Dr. Respess had recruited Rutherford to make. With the foundation of Rutherford's expertise, exhibit 25 projects the profits expected from the school and its merchandise. Exhibit 26, admitted without objection, lists Rutherford's damages. Rutherford testified that the revenues anticipated in the exhibit were reasonable expectations based on his research of comparable facilities. We conclude that Johnny Rutherford was competent to testify to those matters.

Dr. Respess testified that because of Rutherford's work, Chevrolet had already furnished Ishin with the cars for the Texas World Speedway and was ready to provide the equipment for the racing school. These were tasks for which Dr. Respess had recruited Rutherford. Dr. Respess told the jury that Ishin had built a garage building with space for classrooms, that three revenue-producing racing events were held at the Texas World Speedway in 1991, and Respess admitted that if Ishin had put the school in operation, Rutherford would have made profits from it. Dr. Respess conceded that he never did tell Johnny Rutherford that the money owed him would not be paid.

The evidence shows that among the firm reasons to expect the Rutherford/Ishin driving school and merchandise sales to yield a profit were that the market for their "product" was not unknown or unviable, their school was patterned upon schools operated by renowned and successful professionals Bondurant, Buff and Barber, and was to operate at Ishin's established motor speedway which was not a new and unproven

enterprise. Furthermore, Rutherford's name and celebrity reputation in the relevant market were well established, and Chevrolet had expressed confidence in the Rutherford/Ishin school by agreeing to donate Chevrolet products for the school's use. The operation of professional driving schools and the sales of related merchandise is not an uncertain or speculative business, and the evidence does not suggest that the operation of the Rutherford/Ishin school would be a gamble.

■ To support its contention that Rutherford may not recover lost profits without either showing a history of profitability or the actual existence of future contracts from which lost profits can be calculated with reasonable certainty, Ishin relies on *D/FW Commercial Roofing Co., Inc. v. Mehra*, 854 S.W.2d 182, 187 (Tex.App.—Dallas 1993, no writ). That case, however, did not involve a new business nor did it address the standards for reviewing claims for lost profits of a new business, set out in *Texas Instruments, Inc.*, 877 S.W.2d at 279–81. Ishin also cites a summary judgment case, *Orchid Software, Inc. v. Prentice–Hall, Inc.*, 804 S.W.2d 208, 210 (Tex.App.—Austin 1991, writ denied). *Orchid*, however, explains that whether data exists to show the anticipated profits of a new business to a reasonable certainty will depend on the facts and circumstances of each case, and the absence of a history of profits does not, by itself, preclude a new business from recovering lost future profits. *Id.* at 211. *Bell Helicopter Co. v. Bradshaw*, 594 S.W.2d 519, 536 (Tex. Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) was a personal injury suit by two real estate agents injured in a 1975 helicopter crash. That same year, the two had opened an office devoted solely to farm and ranch sales after past experience in residential sales but being "interested" in the sale of farms and ranches. Testimony about their past real estate experience and knowledge of the farm and ranch sales market was held to support their opinion testimony of what they could reasonably expect to earn from future farm and ranch sales. A new business owner's opinion of its lost profits may have probative value even though the estimate is based on knowledge of a previous similar business and the underlying business records are not introduced. *Pena v. Ludwig*, 766 S.W.2d 298, 304 (Tex.App.—Waco 1989, writ requested).

■ Lost profits can be recovered if they are the natural and probable consequences of wrongful conduct. *Pena*, 766 S.W.2d at 304. It is clear from the testimony of Dr. Respess that although Ishin had agreed to start the school, it did not do so and the business failed. He did not testify nor is there any evidence that the business failed because Rutherford's profit projections, admitted without objection in exhibit 25, were speculative or inaccurate. Instead, Dr. Respess admitted that Ishin did not perform its part of the agreement after becoming dissatisfied with its investors for not supplying Ishin the capital it had expected. He testified that over a million dollars came in on two different occasions but about two million dollars more had been expected, yet was not received, by Ishin.

■ Unless a jury verdict that is challenged for factually insufficient evidence is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, we must not set it aside. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). The jury's function is to weigh the evidence and the credibility of the witnesses. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). Even where a different finding might be reached on the evidence, we are not to substitute our judgment for that of the jury, because this court is not the fact finder. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

The totality of the evidence was sufficient for the jury to reasonably conclude that if Ishin had allowed the driving school to open rather than violating its contractual obligations to Rutherford, their enterprise would have been able, in all likelihood, to produce the profits claimed by Rutherford. We find that the evidence was reasonably certain and both legally and factually sufficient to support the jury's answer to question 8 of the charge: that $226,388.87 in lost profits were a natural, probable, and foreseeable consequence of Ishin's failure to comply with its

contract with Rutherford and his corporation. Points of error nine, eleven, and twelve, challenging the evidence on lost profits, are overruled.

 Under point of error ten, Ishin complains that the trial court's instruction on the elements of damages in question 8 on lost profits told the jury that the only element it could consider was:

> Lost profits that were a natural, probable and foreseeable consequence of [Ishin's] failure to comply.

Ishin argues that the court erred by not granting its request for the following instruction to the jury:

> Johnny Rutherford or Johnny Rutherford, Inc. must establish their damages to a reasonable certainty. You must consider only Johnny Rutherford's or Johnny Rutherford, Inc.'s loss of contractual profit, if any, that was a natural, probable, and foreseeable consequence of [Ishin's] failure to comply with the agreement. Loss of contractual profit is the difference between the agreed price and the cost Johnny Rutherford or Johnny Rutherford, Inc. would have incurred in performing under the agreement. You may not consider any other element of damage.

> A party must produce sufficient evidence to enable you to determine the net amount of the loss with reasonable certainty, and the evidence relative to the profits must not be uncertain or speculative. Johnny Rutherford or Johnny Rutherford, Inc. must show either a history of profitability or the actual existence of future contracts from which lost profits can be calculated with reasonable certainty.

The instruction requested by Ishin is both a comment on the weight of the evidence and significantly undermines the flexibility allowed by the Texas Supreme Court's standard for proving lost profits of new businesses. *See Texas Instruments, Inc.,* 877 S.W.2d at 279–80. Because Ishin did not submit a substantially correct instruction in writing to the trial court, point of error ten does not present a ground for reversal of the judgment. TEX.R.CIV.PROC. 278. The tenth point of error is overruled.

## Motions Denied by Trial Court

Point of error thirteen complains of the trial court's denial of Ishin's motion for directed verdict on grounds of legally insufficient evidence on the question of lost profits. Point of error fourteen attacks the trial court's denial of Ishin's motion to disregard the jury's answers to questions 1, 4, and 8 of the charge on grounds of legally insufficient evidence. Point of error fifteen challenges the trial court's denial of Ishin's motion for new trial on the grounds that there was no legally or factually sufficient evidence to support the jury's answers to questions 1, 4, and 8 and that the court erred in refusing Ishin's proposed instructions for those questions. For the reasons we have already discussed, points of error thirteen, fourteen, and fifteen are overruled.

The judgment of the trial court is affirmed.