ACCEPTED
06-15-00022-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/27/2015 11:01:47 PM
DEBBIE AUTREY
CLERK

NO. 06-15-00022-CR

IN THE COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS

TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
7/28/2015 8:32:00 AM
DEBBIE AUTREY
Clerk

SONYA KAY HARGETT, APPELLANT

VS.

THE STATE OF TEXAS, APPELLEE

APPEALED FROM THE 71ST DISTRICT COURT

HARRISON COUNTY, TEXAS

TRIAL COURT NO. 09-0447X

**APPELLEE'S BRIEF**

NOT REQUESTING ORAL ARGUMENT

Jonathan Hyatt
Assistant District Attorney
State Bar No. 24072161
Harrison County District Attorney's Office
200 West Houston Street
Marshall, Texas 75670
Telephone: 903 935-8408
Facsimile: 903 938-9312
jonh@co.harrison.tx.us

ATTORNEY FOR APPELLEE

STATE OF TEXAS

1

IDENTITY OF PARTIES AND COUNSEL

Appellant:

Sonya Kay Hargett


Trial Judge

      Hon. Brad Morin

      71st Judicial District Court

      200 West Houston, Suite 219

      Marshall, Texas 75670


Appellant's Counsel on Appeal

      Jason D. Cassel

      P.O. Box 2649

      Longview, Texas 75606


State's Counsel on Appeal:

      Jonathan Hyatt

      Harrison County District Attorney's Office

      P.O. Box 776

      Marshall, Texas 75670

**TABLE OF CONTENTS**

IDENTITY OF THE PARTIES AND COUNSEL…………………………………...2

TABLE OF CONTENTS………………………………………………………...3

INDEX OF AUTHORITIES……………………………………………………4

STATEMENT OF THE CASE…………………………………………………5

ISSUES PRESENTED FOR REVIEW………………………………………….5

STATEMENT OF FACTS………………………………………………………5

SUMMARY OF THE ARGUMENT……………………………………………6

ARGUMENT………………………………………………………………….6

CONCLUSION AND PRAYER…………………………………………………11

CERTIFICATE OF SERVICE…………………………………………………12

CERTIFICATE OF COMPLIANCE……………………………………………...12

# INDEX OF AUTHORITIES

CASES

*Boykin v. State*, 818 S.W.2d 787 (Tex.App.Crim. 1991)…………………………..6

*Harris v. State*, 359 S.W.3d 625,629 (Tex.Crim.App. 2011)………………………6

*Hill v. State*, 480 S.W.2d 200 (Tex.Crim.App. 1971)……………………………...7

*Hyser v. Reed*, 115 U.S.App.D.C. 254, 318 F.2d 255 (1963)……………………8

*Ishkin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d 343, 349 (Tex.App-Ft. Worth Nov. 1996)…………………………………………………………………………10

*Smith v. Renz*, 840 S.W.2d 702 (Tex.App.-Corpus Christi Oct 1992)……………10

*United States ex re. Sperling v. Fitzpatrick*, 426 F.2d 1161 (2d Cir. 1970)………8

*Yazdchi v. State*, 428 S.W.3d 831 (Tex.App.Crim. 2014)…………………………..6

STATUTES

Tex. Code Crim. Proc. Art. 38.35…………………………………………….5,6,8,11

OTHER

Wikipedia, *Presumptive and Confirmatory Tests*, July 27, 2015,
https://en.wikipedia.org/wiki/Presumptive_and_confirmatory_tests......................9

## STATEMENT OF THE CASE

The state does not disagree with the Statement of the Case provided by Appellee and respectfully requests that the Court rely upon it.

## ISSUE PRESENTED FOR REVIEW

1. **Drug test results along with the expert testimony from said testing was properly admitted at the revocation hearing of Appellant because Article 38.35 of the Texas Code of Criminal Procedure does not apply to revocations; should this Court determine Article 38.35 does apply, the statute provides a specific exception to the exclusion of said evidence.**

## STATEMENT OF THE FACTS

The state does not disagree with the Statement of the Facts presented by Appellee and respectfully requests that the Court rely upon it.

## SUMMARY OF THE ARGUMENT

The trial court did not err in overruling Ms. Hargett's objection to the testimony of the expert and results of the testing performed by Mr. Tommy Thompson under Article 38.35 of the Texas Code of Criminal Procedure.

## ARGUMENT

In reviewing a lower court's interpretation of a statute, the standard of review for appellate courts is de novo. *Yazdchi v. State*, 428 S.W.3d 831 (Tex.App.Crim. 2014). "In construing a statute, the court must seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Yazdchi* citing *Harris v. State*, 359 S.W.3d 625, 629 (Tex.Crim.App.2011). As *Boykin* emphasizes, "When attempting to discern this collective legislative intent or purpose, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment," *Boykin v. State*, 818 S.W.2d 782 (Tex.App.Crim. 1991).

Article 38.35 of the Code of Criminal Procedure outlines the Admissibility of Forensic Analysis of Evidence. Similar to other statutes, it begins with definitions that layout the parameters of this specific section. Of particular importance is 38.35(a)(2)'s definition of "Criminal Action." It reads as follows:

> "Criminal action" includes an investigation, complaint, arrest, bail, bond, trial, appeal, punishment, or other matter related to conduct proscribed by a criminal offense.

6

Upon reading this section, "Criminal action" can be construed as one of 9 categories: (1) investigation, (2) complaint, (3) arrest, (4) bail, (5) bond, (6) trial, (7) appeal, (8) punishment, or (9) "other matter related to conduct proscribed by a criminal offense." The particulars of the instant case before this court are that it is a revocation hearing. Following the logic of the statutory definition of "criminal action's" chronological stroll through criminal procedure, a revocation hearing is none of the first 8 categories. It takes place after the investigation, complaint, arrest, bail, bond, trial, appeal and punishment. After determining a revocation is not any of the first eight categories, we must determine whether it may be considered an "other matter related to conduct proscribed by a criminal offense." In the instant case, the Defendant/Appellant does not stand accused of a new criminal offense. While the specific conduct of the Appellant is criminal in nature, i.e. ingesting methamphetamine or drinking alcohol while on probation, the specific conduct that the trial judge found to be true was not outlined along the lines of a criminal offense. In fact, the Appellant's conduct is more in line with violation of a contract. The contract in this analogy would be the terms of her probation and the violation would be her use of controlled substances/consumption of alcohol while on probation. Case law supports the contention that revocation hearings are administrative in nature. Quoting *Hill v. State*, 480 S.W.2d 200, 202-3 (Tex.Crim.App. 1971), "A probation revocation hearing is not an adversarial

7

proceeding, a civil action or a criminal prosecution…instead, it is administrative in nature, a means of protecting society and rehabilitating law breakers" also citing *Hyser v. Reed*, 115 U.S.App.D.C. 254, 318 F.2d 255 (1963), *United States ex re. Sperling v. Fitzpatrick*, 426 F.2d1161 (2d Cir.1970). Because revocation hearings are not "criminal actions," this court must uphold the trial court's ruling that the drug test results and the subsequent expert testimony of the lab personnel is admissible.

In the event that this Court determines that Art. 38.35 is applicable, the results obtained by the probation department fall well within one of the exceptions to admissibility outlined in 38.35(a)(4)(E). :

> A presumptive test performed for the purpose of determining compliance with a term or condition of community supervision or parole and conducted by or under contract with a community supervision and corrections department, the parole division of the Texas Department of Criminal Justice, or the Board of Pardons and Paroles…

Per the Appellant's brief, there are two reasons why this section should not be applied: (1) that the test was confirmatory in nature as opposed to presumptive and (2) there was no evidence supplied that such test was done as a result of a contract. The state must respectfully disagree with the presumptive importance of both of Appellant's contentions.

While discussing presumptive versus confirmatory testing, one must know what these methods of testing are. Relying on the most efficient and accurate sources of information is important in legal discussions, so the source of this knowledge comes from the most reliable site available, Wikipedia.

> In medical and forensic science, a presumptive test is an analysis of a sample which establishes either:
> 1.The sample is definitely not a certain substance
> 2.The sample probably is the substance.
> For example, the Kastle-Meyer test will show that a sample is not blood, or that the sample is probably blood (but it may be one of a range of less common substances). Further chemical testing is required to prove that the substance is blood.
> Confirmatory tests are the tests required to confirm the analysis. Confirmatory tests cost more than simpler presumptive tests, which is why presumptive tests are often made to see if confirmatory tests are necessary. In a like manner, in medicine, a presumptive diagnosis identifies the likely condition a patient has, and a confirmatory diagnosis confirms the presence of the condition. Wikipedia, *Presumptive and Confirmatory Tests*, July 27, 2015, https://en.wikipedia.org/wiki/Presumptive_and_confirmatory_tests.

The fact that the State's evidence was more reliable than what is statutorily requires shouldn't be held against it. As such, the fact that the testing done on the sample was confirmatory should be commended.

The second contention of Appellant is that there was no evidence supplied of a contract between the probation department and the lab that conducted this test. Unless the lab is the most charitable organization in the greater East Texas area, it is safe to assume that they were paid for their service. In fact, there was testimony of the fact that Tommy Thompson had mailed a contract to the probation

department and that he wasn't sure if the Probation Department had signed off on it (RR 27-28). The fact that there was no signed, notarized, or otherwise blessed contract presented in court does not mean that there was no contract. Citing *Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d 343, 349 (Tex. App.- Ft. Worth Nov. 1996) referencing *Smith v. Renz,* 840 S.W.2d 702, 704 (Tex. App.- Corpus Christi Oct. 1992), "even if an offer and acceptance are not recorded on paper, dealings between parties may result in an implied contract where the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement." Applying this standard to the facts, Thompson's laboratory testing coupled with his appearance in court reinforce the idea that he was compensated. There was no testimony indicating that he was forced to do any of this testing or present analysis of said tests in Court without being compensated or otherwise paid per the contractual terms he had mailed to the Probation Department.

Upon further examination of this specific exception, this specific section allows the testing of individuals on probation by probation. Testimony elicited during the revocation from the probation officer indicated that the probation officer took a sample of urine from the Appellant (RR 6-9). By the probation officer directly participating in retrieving the sample, it serves as a further activation of this exception to the requirement that any lab work be submitted by a DPS accredited lab. As such, because the method of testing is more reliable, the lab and

10

Probation Department had an implied contract, and the probation department actually participated in the collection of the urine sample, this exception to the DPS accreditation requirement is applicable.

The final contention of the Appellant is that the forensic analysis presented in this case was not accredited by the Department of Public Safety and should therefore not be permitted into evidence. Art. 38.35(d)(1) reads:

> Except as provided by Subsection (e), a forensic analysis of physical evidence under this article and expert testimony relating to the evidence are not admissible in a criminal action if, at the time of the analysis, the crime laboratory conducting the analysis was not accredited by the director under Section 411.0205, Government Code.

In the unlikely event this Court considers this last ditch argument, there is no counter-argument from the state. No evidence was presented by the state of any such accreditation, and if the court is not inclined to agree with our previous arguments, we must cede this point.

## CONCLUSION AND PRAYER

Based on the foregoing, the Appellee prays that the Appellant's points of error be overruled and judgment be affirmed.

Respectfully Submitted,

Jonathan Hyatt
Assistant District Attorney
Harrison County District Attorney's Office
200 West Houston Street
Marshall, Texas 75670
Telephone: 903 935-8408
Facsimile: 903 938-9312


/s/ Jonathan Hyatt

Jonathan Hyatt
State Bar No. 24072161

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 1580 words according to the computer program used to prepare the document.

/s/ Jonathan Hyatt

Jonathan Hyatt

## CERTIFICATE OF SERVICE

A copy of this brief was provided on July 27, 2015 to:

Hon. Brad Morin via facsimile, and

Jason D. Cassel via facsimile.


/s/ Jonathan Hyatt

Jonathan Hyatt